NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

IAIN CURTIS-SHANLEY,

       Debtor.

-------------------------------------------------------------x
IAIN CURTIS-SHANLEY,

       Plaintiff,

  -against-

DEPARTMENT OF EDUCATION, NAVIENT
PRIVATE LOAN TRUST, NEW YORK
UNIVERSITY, and SALLIE MAE,

       Defendants.
-------------------------------------------------------------x

Chapter 7

Case No. 23-22314 (KYP)

Adv. Pro. No. 23-07020 (KYP)

**MEMORANDUM DECISION GRANTING THE U.S. DEPARTMENT OF
EDUCATION'S MOTION FOR SUMMARY JUDGMENT AND DENYING
THE DEBTOR'S MOTION FOR SUMMARY JUDGMENT**

**APPEARANCES:**

IAIN CURTIS-SHANLEY
*Pro Se Debtor-Plaintiff*
38 Ridge Street
Hastings-on-Hudson, NY 10706

DAMIAN WILLIAMS
*United States Attorney for the
Southern District of New York*
86 Chambers Street
3rd Floor
New York, NY 10007
By:   Dana Walsh Kumar, Esq.
         Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

**INTRODUCTION**

Dr. Iain Curtis-Shanley ("Debtor") commenced this adversary proceeding *pro se* to discharge student loan debt, including debt owed to the United States Department of Education ("DOE") in the amount of $562,494.78, on the basis that repayment of such debt would impose an undue hardship on the Debtor within the meaning of 11 U.S.C. § 523(a)(8). The DOE and the Debtor have now each moved for summary judgment (the "DOE Motion"[1] and the "Debtor Motion,"[2] respectively). For the reasons stated, the DOE Motion is GRANTED, and the Debtor Motion is DENIED.

**JURISDICTION**

This Court has jurisdiction over the DOE Motion and the Debtor Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

---

[1]    *See Memorandum of Law in Support of the U.S. Department of Education's Motion for Summary Judgment*, dated Aug. 9, 2024 ("DOE Brief") (ECF Doc. # 24), and *Reply Memorandum of Law in Further Support of the Government's Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Summary Judgment*, dated Oct. 4, 2024 ("DOE Reply") (ECF Doc. # 33). "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding. "ECF Main Case Doc. # _" refers to documents on the electronic docket of the Debtor's Chapter 7 bankruptcy case. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]    *See Answer to Motion for Summary Judgment, and Counter-Motion for Summary Judgment*, dated Aug. 12, 2024 ("Debtor Brief") (ECF Doc. # 32), *Reply to Opposition to Motion for Summary Judgment*, dated Oct. 7, 2024 ("Debtor Reply") (ECF Doc. # 34), and *Memorandum of Law in Support of Debtor-Plaintiff's Motion for Summary Judgment*, dated Oct. 24, 2024 ("Debtor Supp. Brief") (ECF Doc. # 37).

## BACKGROUND[3]

### A.  The Debtor's Educational History and Accrual of Student Loan Debt

Between 2005 and 2022, the Debtor attended numerous institutions of higher education, borrowing hundreds of thousands of dollars to cover tuition and expenses. The Debtor began his undergraduate studies at Goddard College then transferred to the State University of New York, Empire State University ("Empire State University"). (*Deposition of Iain Curtis-Shanley*, dated Feb. 14, 2024 ("Debtor Depo.")[4] at 19:22-20:6.)  In 2010, the Debtor graduated from Empire State University with a Bachelor of Arts in literature and history.  (Debtor Depo. at 24:11-16, 25:19-22.)

The Debtor then attended Kaplan University and received a Master of Science degree in information technology.  (*Id.* at 20:10-18, 25:16-18.)  The Debtor also enrolled in Concord Law School, and took courses there, but did not graduate from that institution.  (*Id.* at 20:15-16.)

The Debtor then enrolled in the State University of New York, Purchase College ("Purchase College") in 2014.  (*Id.* at 28:2-9.)  The Debtor testified that the purpose of this enrollment was to complete prerequisite coursework to apply to medical school. (*Id.* at 28:11-25.)  Thus, the Debtor did not ultimately receive a degree from Purchase College.  (*Id.* at 29:10-21.)

---

[3]     The background is culled from the following sources and exhibits appended thereto:
(i) *Defendant's Statement of Material Undisputed Facts Pursuant to Local Bankruptcy Rule 7056-1*, dated Aug. 9, 2024 ("DOE Fact Statement") (ECF Doc. # 28); (ii) *Declaration of Dana Walsh Kumar*, dated Aug. 9, 2024 ("Kumar Declaration") (ECF Doc. # 25); (iii) *Declaration of Dr. Daniel Wolstein*, dated Aug. 1, 2024 ("Wolstein Declaration") (ECF Doc. # 26); (iv) *Declaration of Gin Say Chan*, dated Aug. 9, 2024 ("Chan Declaration") (ECF Doc. # 27); (v) *Declaration of Iain Curtis-Shanley*, dated Oct. 22, 2024 ("Debtor Declaration") (ECF Doc. # 36); and (vi) *Declaration of Iain Curtis-Shanley*, dated Nov. 9, 2024 ("Debtor Supp. Declaration") (ECF Doc. # 38), as well as matters for which the Court may take judicial notice.

[4]     Excerpts of the Debtor Depo. are attached to the Kumar Declaration as Exhibit A.

3

In 2017, the Debtor enrolled in St. George's University, School of Medicine ("SGU Medical School") located in Grenada, West Indies. (*Id*. at 30:2-10.) The Debtor graduated with a medical degree in 2021. (*Id*. at 37:20-23.)

Upon graduation from SGU Medical School, the Debtor enrolled in New York University Tandon School of Engineering ("NYU Tandon") in the fall of 2021 to pursue a Master of Science degree in biomedical engineering. (*Id*. at 37:7-14.) The Debtor completed the requirements for such degree around the fall of 2022 and the same is reflected on his unofficial transcript. (*Id*. at 44:2-13, 45:10-17.) Nonetheless, the Debtor testified that NYU Tandon has not awarded him the actual degree because of outstanding financial debts owed to the institution. (*Id*. at 44:16-45:6.)

Subsequent to completing the degree requirements at NYU Tandon, the Debtor was accepted to the New York University School of Global Public Health to pursue a Master of Public Health degree. (*Id*. at 46:12-14.) He could not enroll in the program, however, because he had "maxed out on the amount of financial aid" he had already taken. (*Id*. at 46:14-19.)

The Debtor has more recently acquired several professional certificates including (i) a medical billing coder certificate, (ii) a phlebotomy certificate, (iii) an electrocardiogram (EKG) certificate, and (iv) a teaching English as a second language certificate. (*Id*. at 60:19-62:4.)

The cumulative amount of student loan debt owed by the Debtor to the DOE is currently $562,494.78. (Chan Declaration ¶ 8; *id*., Ex. C.) To date, the Debtor has made one payment of $30.00 toward repayment of the loan on July 7, 2021. (Chan Declaration ¶ 8.)

4

**B.     The Debtor's Employment History**

In his final year at SGU Medical School, the Debtor applied for postgraduate medical residencies but was unable to secure one. (Debtor Depo. at 38:23-39:6.) The Debtor reapplied in subsequent application cycles but has not been able to secure a medical residency to date. (*Id.* at 45:10-46:3; *see also* Debtor Declaration, Ex. E at ECF pp. 51-54 (screenshots of webpages showing that the Debtor applied for numerous medical residencies between 2021 and 2024).)

Since September 2022, the Debtor has applied for various other jobs including computer programmer, private school teacher, English language teacher to non-native speakers, medical assistant, assistant physician, and various management positions. (Debtor Depo. at 65:6-68:23; *see also* Debtor Declaration, Ex. E at ECF pp. 26-50 (screenshots of webpages showing that the Debtor has applied for an array of jobs).) The only job the Debtor held in this period was as a per diem substitute teacher in a Yonkers, New York public school between May and June 2023. The Debtor worked as a substitute teacher for about a month and a half and earned approximately one to two thousand dollars, which the Debtor spent on medical residency applications. (Debtor Depo. at 94:5-96:8.)

The Debtor is currently unemployed. The Debtor does not have any health issues that would affect his ability to gain employment. (*Id.* at 63:24-64:11.)

**C.     The Debtor's Living Circumstances**

The Debtor is thirty-seven years old, is single, has no dependents, and resides in his mother's house in Hastings-on-Hudson, New York. (*Id.* at 78:7-23; *Attestation of Iain Curtis-Shanley in Support of Request for Stipulation Conceding Dischargeability of Student Loans*, dated May 1, 2023 at 2 (ECF Doc. # 1-2).) The Debtor has been living

5

at this residence since graduation from NYU Tandon in 2022.  (Debtor Depo. at 79:8-18.)  The Debtor does not pay rent.  (*Id.* at 79:23-24.)  He neither contributes to payment of utility bills nor other household expenses as he has no income.  (*Id.* at 79:25-80:6.)  The Debtor's personal expenses are covered by contributions from his family; the Debtor also receives roughly $300 per month from the New York Supplemental Nutrition Assistance Program (formerly known as the Food Stamp Program) to purchase food.  (*Id.* at 89:19-91:22.)

D.    **This Adversary Proceeding and the Summary Judgment Motions**

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 28, 2023.  (ECF Main Case Doc. # 1.)  On May 5, 2023, the Debtor commenced this adversary proceeding seeking a discharge of student loans owed to the DOE, Navient Private Loan Trust, New York University, and Sallie Mae.  (ECF Doc. # 1.)  The Debtor and Defendants New York University and Navient Private Loan Trust subsequently entered into stipulations dismissing the claims against those Defendants.  (*See* ECF Doc. # 12 (dismissal stipulation with New York University stating that "New York University does not hold any educational loans against the Plaintiff"); ECF Doc. # 31 (dismissal stipulation with Navient stating that the Debtor's "liability on the educational loan owed to Navient Solutions, LLC . . . is hereby rendered dischargeable and included within any general discharge entered in the [Debtor's] main bankruptcy case . . . .").)

The DOE filed the DOE Motion on August 9, 2024, and the Debtor filed the Debtor Motion on August 12, 2024.  After the parties completed briefing, the Court heard oral argument on November 21, 2024 and took the matters under advisement.

**DISCUSSION**

A.   **Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The movant bears the burden of establishing that no genuine issue of material fact exists.  *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).  Once the movant has carried its initial burden, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial."  *Bustamante*, 100 F.4th at 432 (citation omitted).  When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party.  *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

When both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).  "However, where the motion and cross-motion seek a determination of the same issue, the Court may address them together."  *Jackson v. Harvest Capital Credit Corp.*, No. 17 Civ. 5276 (JFK), 2020 WL 705084, at *5 (S.D.N.Y. Feb. 12, 2020), *aff'd*, 848 F. App'x 455 (2d Cir. 2021).  Here, both the DOE Motion and the Debtor Motion seek a determination of the same issue: whether the repayment of the student loan debt owed to the DOE would impose an "undue hardship" on the Debtor within the meaning of 11 U.S.C. § 523(a)(8).

**B.     The *Brunner* Test**

Pursuant to section 523(a)(8) of the Bankruptcy Code,[5] student loans are presumptively nondischargeable in bankruptcy. *Easterling v. Collecto, Inc.*, 692 F.3d 229, 231-32 (2d Cir. 2012). However, student loans can be discharged in bankruptcy if repayment would impose an "undue hardship" on the debtor and the debtor's dependents. *Tingling v. Educ. Credit Mgmt. Corp.* (*In re Tingling*), 990 F.3d 304, 308 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1367 (2022).

To determine whether repayment of student loans imposes an undue hardship, courts in the Second Circuit apply the three-part test set forth in *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). Under that test, student loans may only be discharged if the Court finds:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

---

[5]     11 U.S.C. § 523(a)(8) provides that a bankruptcy discharge:

> does not discharge an individual debtor from any debt . . . unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for
>
> > (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> >
> > > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> >
> > (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

8

*Brunner*, 831 F.2d at 396. The *Brunner* test "reflects the Section 523(a)(8) statutory scheme exhibiting clear congressional intent . . . to make the discharge of student loans more difficult than that of other nonexcepted debt . . . ." *Tingling*, 990 F.3d at 309 (quoting *Brunner*, 831 F.2d at 396).

The debtor bears the burden of establishing by a preponderance of the evidence that each requirement of the *Brunner* test is met. *Traversa v. Educ. Credit Mgmt. Corp.* (*In re Traversa*), 444 F. App'x 472, 474 (2d Cir. 2011) (quoting *Brunner*, 831 F.2d at 396) (summary order), *cert. denied*, 568 U.S. 817 (2012). Therefore, "[i]f one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *Williams v. N.Y. State Higher Educ. Servs. Corp.* (*In re Williams*), 296 B.R. 298, 302 (S.D.N.Y. 2003) (quoting *Pa. Higher Educ. Assistance Agency v. Faish* (*In re Faish*), 72 F.3d 298, 306 (3d Cir. 1995)), *aff'd*, 84 F. App'x 158 (2d Cir. 2004).

C.   **Application of the *Brunner* Test to this Case**

   1.   **The First and Third Prongs**

The first prong of the *Brunner* test "requires a debtor to show that if the debtor, based on current finances, is required to make the monthly student loan payment, the debtor's standard of living will fall below a minimal level." *Thoms v. Educ. Credit Mgmt. Corp.* (*In re Thoms*), 257 B.R. 144, 148 (Bankr. S.D.N.Y. 2001) (citation and internal quotation marks omitted). A debtor "need not live a life of abject poverty, but it does require more than a showing of tight finances." *Hlady v. Key Bank N.A.* (*In re Hlady*), 616 B.R. 257, 270-71 (Bankr. E.D.N.Y. 2020) (citation and internal quotation marks omitted). When considering this factor, courts will "review the reasonableness of the Debtor's budget – particularly the allocation of projected expenses in relation to

9

projected income – as it determines his capability to pay the instant obligations without undue hardship." *Pincus v. Graduate Loan Ctr.* (*In re Pincus*), 280 B.R. 303, 317 (Bankr. S.D.N.Y. 2002). "Additionally, courts consider whether a debtor has sought to maximize [his] ability to earn adequate income to pay for expenses and student loans while minimizing certain discretionary expenses." *Hlady*, 616 B.R. at 271 (citing *Pincus*, 280 B.R. at 318).

The third prong considers whether the Debtor has made good faith efforts to repay the student loan. *Brunner*, 831 F.2d at 396. "This prong . . . recognizes that undue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *In re Lozada*, 604 B.R. 427, 437 (S.D.N.Y. 2019) (quoting *Pobiner v. Educ. Credit Mgmt. Corp.* (*In re Pobiner*), 309 B.R. 405, 420 (Bankr. E.D.N.Y. 2004)). "In making this determination, courts examine not only a debtor's loan payment history, but also a debtor's efforts to maximize his income, minimize his expenses, and participate in alternative repayment options." *Rosenberg v. Educ. Credit Mgmt. Corp.*, No. 20-CV-00688 (PMH), 2021 WL 4461341, at *13 (S.D.N.Y. Sept. 29, 2021) (citations and internal quotation marks omitted).

There are disputed issues of fact on the application of the first and third prongs of the *Brunner* test to the Debtor. On the one hand, the Debtor states that:

- he has zero income, and therefore, his income level necessarily falls below any quantifiable standard of living (Debtor Brief ¶ 3);
- he has made efforts to maximize his income by applying for medical residencies and numerous other jobs (Debtor Depo. at 38:23-39:6, 45:10-46:3; Debtor Declaration, Ex. E at ECF pp. 26-54); and
- he has demonstrated good faith repayment efforts by (i) making a loan payment, (ii) applying for loan deferment twelve times, (iii) applying for an income-driven

10

repayment plan ten times, and (iv) consulting with debt-consolidation agencies about his student loans (Debtor Brief ¶ 5; Debtor Declaration, Ex. A).

On the other hand, the DOE asserts that:

- the Debtor maintains a minimal standard of living despite his lack of employment by living rent free at his mother's house (DOE Brief at 11);

- the Debtor has failed to sufficiently curtail his discretionary spending including by taking multiple international trips and spending large amounts at restaurants and for concert tickets (*id.* at 11-12);

- the Debtor has not maximized his income because his job search was not targeted to positions matching his qualifications (*id.* at 12);

- the Debtor is eligible for an income-based repayment plan (*id.*; *see also* Chan Declaration ¶ 7 (showing multiple repayment plans the Debtor could be eligible for)); and

- the Debtor has failed to demonstrate good faith because (i) he has only made a single $30 payment toward repayment of the student loan, (ii) he has spent extraneous funds on travel, restaurants, and concert tickets rather than on repayment of the student loan, and (iii) he testified that he wished to take on even more student loan debt to enroll in New York University School of Global Public Health to obtain another advanced degree (DOE Brief at 5, 17, and 19).

Imbedded in these arguments are factual matters that cannot be resolved on motions for summary judgment. Since the Debtor bears the burden of proof on each prong of the *Brunner* test, the Debtor Motion must be denied because there are disputed facts on the application of the first and third prongs. The fate of the DOE Motion, on the other hand, depends on whether summary judgment may be granted as a matter of law on the second prong of the *Brunner* test.

### 2. The Second Prong

"The second prong of the *Brunner* test requires a debtor to show that additional circumstances exist indicating that the debtor's present economic duress is likely to persist for a significant portion of the repayment period for the student loans, and that the inability to pay is because of factors beyond the debtor's control." *Lozada*, 604 B.R.

11

at 436 (quoting *Crawley v. Educ. Credit Mgmt. Corp.* (*In re Crawley*), 460 B.R. 421, 438 (Bankr. E.D. Pa. 2011)) (internal quotation marks and alteration omitted). Under this prong, a debtor seeking to discharge student loans must "provide evidence not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time." *Traversa*, 444 F. App'x at 474 (quoting *Brunner*, 831 F.2d at 396) (internal quotation marks omitted). Courts will consider numerous factors "including the debtor's gross income, age, health, dependents, and marital status." *Williams*, 296 B.R. at 302. "Even a debtor who is unemployed cannot establish undue hardship where the debtor has the potential to find employment." *Id.* at 303.

Here, the Debtor cannot meet the second prong of the *Brunner* test. The Debtor is relatively young, healthy, and highly educated. He is also single, has no dependents, and has minimal monthly expenses. It would be an anomalous result indeed to find that a young, healthy individual with minimal expenses and no dependents, who has a Bachelor of Arts in literature and history, a Master of Science in information technology, a medical degree, and who has completed the requirements for a Master of Science in biomedical engineering, has shown "exceptional circumstances" suggesting a continuing inability to repay over an extended period of time. *Brunner*, 831 F.2d at 396; *see also id.* ("The record demonstrates no 'additional circumstances' indicating a likelihood that her current inability to find work will extend for a significant portion of the loan repayment period. She is not disabled, nor elderly, and she has . . . no dependents.").[6]

---

[6] The Debtor states that he has not yet been awarded the Master of Science degree from NYU Tandon due to outstanding student loan debts. (Debtor Depo. at 44:16-45:9.) However, NYU has stipulated that it "does not hold any educational loans against the Plaintiff" (*see* ECF Doc. # 12 (dismissal

12

This conclusion is bolstered by the DOE's expert witness, Dr. Daniel Wolstein, who submitted the Wolstein Declaration and the accompanying Vocational Evaluation and Earning Capacity Analysis ("Wolstein Report").[7] Initially, the Court finds that Dr. Wolstein's analysis meets the requirements of Rule 702 of the Federal Rules of Evidence.[8] Under Rule 702, an expert witness "is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Under *Daubert*, the Court "'functions as the gatekeeper for expert testimony,' whether proffered at trial or in connection with a motion for summary judgment." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)). "To determine whether a proposed expert's testimony passes muster under Rule 702, this Court must inquire into: (1) the qualifications of the proposed expert; (2) whether each proposed opinion is based on reliable data and

---

stipulation between the Debtor and NYU)), which suggests that debts owed by the Debtor to NYU could be subject to a Chapter 7 bankruptcy discharge.

7    A copy of the Wolstein Report is attached to the Wolstein Declaration as Exhibit A.

8    Federal Evidence Rule 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702.

reliable methodology; and (3) whether the proposed testimony would be helpful to the trier of fact." *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, 574 F. Supp. 3d 197, 200-01 (S.D.N.Y. 2021) (quoting *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013)).

Dr. Wolstein is a certified rehabilitation counselor and professional vocational evaluator with a doctoral degree in rehabilitation counseling and administration. (Wolstein Declaration ¶ 3.) To analyze the Debtor's employability, Dr. Wolstein employed the McCroskey Transferable Skills Program ("MTSP"), which analyzes an individual's abilities and skills against the requirements for jobs in a local labor market. (Wolstein Report at 4.) To perform this analysis on the Debtor, Dr. Wolstein conducted a video interview of the Debtor, reviewed the Debtor's educational history, and gathered extensive data on the labor market where the Debtor resides. The Court finds that Dr. Wolstein's analysis is based on reliable data and a reliable methodology, his opinion on the Debtor's employability is germane to the issues in this case, and he is qualified to provide such opinion.

Dr. Wolstein generated an MTSP report for the Debtor and found that the Debtor's profile matched 533 jobs across several categories that are frequently available in Westchester County, New York. (Wolstein Report at 8-9; *id.*, Appendix A (copy of the Debtor's MTSP report).) According to Dr. Wolstein, the Debtor's vocational options could include:

- emergency or family physician (upon completion of STEP 3 examination and medical residency);
- medical biller or medical coder;
- phlebotomist;
- EKG technician;

14

- medical assistant;
- coder/computer programmer; or
- medical office manager.

(*Id.* at 10.) Dr. Wolstein noted that the Debtor was an "excellent academician" whose "transcripts and postsecondary educational curriculums indicate that he has well above average academic abilities to master new subject matter." (*Id.* at 9.) Dr. Wolstein summarized his opinion as follows:

> By virtue of his educational accomplishments, Dr. Curtis-Shanley is employable. While he has not yet launched a career, he has developed skills from his education and training, and he can obtain work to convert that training into transferable skills. There are sufficient job opportunities in his local labor market in a range of occupations. Dr. Curtis-Shanley does not have any vocational barriers that would preclude him from seeking entry-level job openings. With a due diligence job search process, he can enter the labor market in an entry-level position with corresponding levels of compensation.

(*Id.* at 14.)

The Debtor points out that it is highly unlikely that he will be able to obtain a medical residency because the likelihood of acceptance drops after each unsuccessful application cycle, and the Debtor is on his fifth application cycle. (Debtor Brief ¶ 4.) In his supplemental declaration, the Debtor added that his ECFMG certificate – a document that validates the qualifications of international medical school graduates – was set to expire in December 2024. (Debtor Supp. Declaration ¶ 9; *id.*, Ex. G.) Absent recertification,[9] the Debtor would no longer be eligible for a U.S. medical residency upon the expiration of his ECFMG certificate. (*Id.*, Ex. G.)

---

[9]    According to the Debtor, recertification would require three physicians to agree to allow the Debtor to examine and diagnose two of their patients, *i.e.*, six patients in total. The Debtor has not had success in getting physicians to assist in his recertification. (Debtor Supp. Declaration, Ex. G.)

15

However, becoming a medical doctor is but one of the possible professions the Debtor could pursue given his extensive educational background. He can still pursue any number of other professions that are available to individuals with the credentials the Debtor possesses.

Because the Debtor does not satisfy the second prong of the *Brunner* test, the Court must grant summary judgment to the DOE.

## **CONCLUSION**

For the reasons stated, the DOE Motion is GRANTED, and the Debtor Motion is DENIED. Any arguments raised by the parties but not specifically addressed herein have been considered by the Court and are rejected or rendered moot by the Court's ruling. Counsel to the DOE shall submit an order consistent with this Memorandum Decision via the Court's eOrders system.

/s/ Kyu Y. Paek

_____

**Dated: May 8, 2025**
**Poughkeepsie, New York**

**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**